UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| VIRGINIA S. CAUDILL, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 5:10-84-DCR |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| JANET CONOVER, Warden of Kentucky ) | |
| Correctional Institute for Women, ) | |
| ) | |
| Respondent. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Virginia Caudill is a death-sentenced inmate who has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [R. 1]. The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the purposes of hearing all non-dispositive pre-trial matters and conducting any necessary hearings. [R. 22]. Currently before the Court is the Petitioner's motion for discovery and an evidentiary hearing. [R. 26]. Also pending is Petitioner's motion for appointment of an independent expert. [R. 27]. The issues have been fully briefed and are now ripe for review.

I.   BACKGROUND

During the early morning hours of March 15, 1998, Lonnetta White was bludgeoned to death in her home in Lexington, Kentucky. Her body was found in the trunk of her burning vehicle in a field several miles away. Numerous items of valuable personal property, including guns, jewelry, and a mink coat, were stolen from her home. Caudill and her co-defendant, Jonathon Goforth, admitted they were present in White's home when the murder occurred, but each accused the other of murdering and robbing the victim and setting fire to her vehicle. Caudill v. Commonwealth, 120

S.W.3d 635, 648 (Ky. 2003), modified on denial of reh'g, Feb. 5, 2004.

> Caudill had been living with the victim's son, Steve White, but had moved out of his house on either March 13 or 14 following an argument concerning Caudill's drug use. Caudill went to a nearby "crack house," a residence where drug users gathered to buy, sell, and ingest controlled substances, especially crack cocaine. There she encountered Goforth, a casual acquaintance whom she had not seen for about fifteen years. Caudill testified that, on the afternoon of March 14, Goforth gave her a ride to Mrs. White's residence and that Caudill induced White to give her twenty or thirty dollars on the pretext that she needed the money to rent a room for the night. Instead, she returned to the crack house and used the money to purchase crack cocaine. At about 3:00 a.m. on March 15, Caudill and Goforth returned to Mrs. White's residence.
>
> According to Caudill, she went to the door and told Mrs. White that she needed more money for the room rental. Goforth remained out of sight near the garage. When Mrs. White turned away to retrieve the money, Goforth burst through the door and attacked her without warning. Caudill did not identify the weapon used by Goforth but remembered that, during the course of the attack, Mrs. White pleaded with her to "please help me, Virginia." Goforth then took Caudill to a bedroom and bound her hands together. After killing White, Goforth ransacked the residence, loaded the jewelry, guns, and mink coat into his pickup truck, and wrapped the body in a carpet. He then prevailed upon Caudill to help him carry the body to the garage and load it into the trunk of Mrs. White's automobile. The two then drove both vehicles to a vacant field where Goforth doused Mrs. White's vehicle with gasoline and set it afire.
>
> According to Goforth, Caudill induced Mrs. White to admit them into her residence under the pretext that they were having car trouble and needed to use White's telephone. Once inside, Caudill demanded that Mrs. White give her some money. When White refused, Caudill unexpectedly produced a roofer's hammer that she had surreptitiously removed from Goforth's pickup truck and struck White in the back of the head with full force. When Goforth asked Caudill why she had struck Mrs. White, Caudill struck her again. As Caudill continued to bludgeon the victim with the hammer, Goforth went into the living room, sat down on a sofa, and pondered what he should do next. Caudill ransacked the victim's residence and loaded the stolen property into Goforth's pickup truck. She wrapped Mrs. White's body in the carpet. At Caudill's request, Goforth helped carry the body to the garage and load it into the trunk of White's automobile. They then drove both vehicles to a vacant field where Caudill doused White's automobile with gasoline and set it afire.

Id. at 648-49.

Caudill and Goforth were each convicted by a jury of murder, robbery in the first degree, burglary in the second degree, arson in the second degree, and tampering with physical evidence. Id. at 648. Each was sentenced to death for the murder of Lonetta White and received the maximum authorized penalties on the remaining convictions. Id.

On direct appeal, the Kentucky Supreme Court affirmed all of Caudill's and Goforth's convictions and sentences. Id. Caudill's convictions became final on June 21, 2004 when the United States Supreme Court denied certiorari. Caudill v. Kentucky, 542 U.S. 922 (2004). On February 11, 2005, Caudill filed a post-conviction motion in state court seeking relief pursuant to Kentucky Rules of Criminal Procedure ("RCr") 11.42 and 60.02, as well as Kentucky Rule of Civil Procedure ("CR") 10.02. [Tr. 428-487]. Caudill also filed a motion seeking leave of court to conduct post-conviction discovery. [Tr. 424-426]. The state circuit court did not permit any post-conviction discovery and held an evidentiary hearing addressing only Caudill's claim of juror misconduct. The court eventually denied all of Caudill's post-conviction claims. [Tr. 773-785]. Caudill appealed all but her juror misconduct claim to the Kentucky Supreme Court, which denied relief on April 23, 2009. Caudill v. Commonwealth, No. 2006-SC-457, 2009 WL 1110398 (Ky. Apr. 23, 2009). Caudill's petition for rehearing was denied, and on March 8, 2010, she filed a petition for habeas corpus in federal court. [R. 1].

## II. SUMMARY OF PENDING MOTIONS

The Petitioner has asked the Court to permit discovery so that she may obtain (1) "any evidence in the control of the Respondent of an exculpatory nature" and (2) "depositions of her trial counsel and of former Kentucky State Crime Lab employee Edward Taylor." [R. 26 at 2]. She also seeks an evidentiary hearing and the appointment of an expert in blood stain pattern analysis. [R.

3

26 at 25; R. 27 at 1]. More specifically, Petitioner's motions for discovery, an evidentiary hearing, and appointment of an expert relate to the following claims:

**Claim 8: Knowing Presentation of False Testimony/Prosecutorial Misconduct.** In her eighth claim for relief, Petitioner asserts that the prosecution knowingly permitted false testimony from Cynthia Ellis, Julia Davis, and Jeanette Holden. [R. 1 at 66-77]. Cynthia Ellis and Julia Davis are jailhouse informants who testified that Caudill confessed to killing the victim. Jeanette Holden lived in the house where police found Caudill following the murder. She testified that Caudill had made statements to her about wanting to hurt somebody in order to make money. Petitioner claims that prosecutorial misconduct was committed when the prosecutors in her case failed to correct false statements by these witnesses. Cynthia Ellis denied receiving any benefit from the prosecution in exchange for her testimony. [R. 1 at 66-69]. Julia Davis incorrectly recited the details of the plea bargain in her criminal case. [Id. at 70-72]. Jeanette Holden testified that she received no benefit on her own charges that were pending at the time she cooperated with investigators. [Id. at 72-73]. Petitioner argues that the Commonwealth's files will demonstrate that all three witnesses testified falsely about the benefit they received in exchange for their cooperation. Presumably, Caudill would also call these individuals as witnesses at an evidentiary hearing, along with any other witnesses who might be identified in the discovery materials as having knowledge of the deals.

**Claim 9: Prosecutorial Misconduct Preventing Impeachment.** Petitioner next claims that the prosecution committed misconduct by objecting when Petitioner's trial counsel asked Jeanette Holden whether she had cooperated with police in another investigation. [R. 1 at 77-79]. Petitioner contends that the line of questioning by counsel was relevant to Holden's credibility as a jailhouse snitch, and that the prosecutor engaged in misconduct by seeking to have it suppressed. The

discovery sought would allegedly show that Holden had a "cozy" relationship with police and frequently cooperated in their investigations.

**Claim 10: Violation of <u>Brady v. Maryland</u>.** Caudill also argues that the prosecution violated <u>Brady</u> by failing to disclose the parameters of any deals that were made with Ellis, Davis, and Holden in exchange for their testimony. [R. 1 at 79-82]. Caudill believes that the requested files will contain the parameters of the deals made with these witnesses and prove that the prosecution violated <u>Brady</u> by failing to disclose those details.

**Claims 11, 12, 13, 14, 15, 16, and 17: Ineffective Assistance of Counsel.** The second category of discovery sought by Petitioner relates to her claims of ineffective assistance of trial counsel. In grounds eleven through seventeen of her petition, Caudill claims that trial counsel performed ineffectively by (11) failing rebut the prosecution's blood spatter expert witness; (12) failing to present evidence that Goforth had a motive to rob and murder the victim; (13) failing to investigate and impeach the prosecution's informant witnesses; (14) failing to call Jeffrey Spence to testify; (15) failing to cite adequate reasons for separate trials; (16) ineffectively investigating and presenting mitigation evidence; and (17) failing to inform the Petitioner of her right to testify. [R. 1 at 82-127]. To bolster these claims, she seeks leave to take depositions of her trial counsel. Petitioner states that the purpose of deposing trial counsel would be to discover the basis of counsel's decisions and the facts known and available to counsel when the decisions were made.

With respect to Claim Eleven, Petitioner requests leave to depose a former Kentucky State Crime Lab employee, Edward Taylor. Petitioner also asks the Court to provide her with funds to obtain a blood stain interpretation expert pursuant to 18 U.S.C. § 3599(f). [R. 27]. Petitioner believes that deposing Taylor and retaining an expert will demonstrate that counsel ineffectively

challenged the blood stain evidence used against her.

Linda Winkle, a blood stain pattern interpretation specialist, testified for the prosecution at trial and concluded that some of the blood found on Caudill's boots was what is called "small impact spatter." [ Video Record, 2/14/2000 at 14:24:00 *et seq*.]. Based on the size, shape and distribution of the small blood spatter stains, she concluded that Caudill was three feet or closer to a beating. [Id. at 14:26:00 - 14:27:30]. The prosecution used this testimony to cast doubt on the truthfulness of Caudill's story that she was bound in a separate room while Goforth beat Ms. White to death. [V.R., 2/16/00 at 11:39:20-11:40:50; 12:01:16-12:02:00].

During the course of counsel's post-conviction investigation, a Department of Public Advocacy ("DPA") investigator interviewed Mr. Taylor. The DPA investigator provided an affidavit recounting the details of their conversation. Taylor allegedly told the investigator

> that the [blood] spots were consistent with having been near a beating and thus could be impact spatter. However, he also told us that the spots could be satellite spatter which occurs when blood either (a) drips and lands in other blood or (b) drips and while falling glances off an object ... . He thus said he could not rule out that the spatter came from Caudill assisting in carrying Ms. White's body.
>
> Further, Taylor said that he could not rule out that the small spots came from the truck accident Caudill had the day after the crime. Having seen pictures of Caudill's injured hands, he stated that the tumbling pickup truck could have caused the spots. Because none of these small spots were DNA tested they could have been Caudill's blood.

[Tr. 493, *Affidavit of Douglas Blair*]. Based on this affidavit, Petitioner argues that her trial counsel performed ineffectively by failing to cross-examine Winkle regarding alternate sources for the blood stains and by failing to retain an expert who could confirm that the blood stains on Petitioner's boots could have come from sources other than a beating. Petitioner wishes to retain an expert who could testify at an evidentiary hearing and prove that trial counsel's failure to retain an expert was

6

prejudicial.

Petitioner sought much of these same discovery materials in a post-conviction motion filed in state court. [Tr. 424-426]. Specifically, Petitioner asked for all exculpatory material not previously revealed, including information relating to any deals made between the Commonwealth and Cynthia Ellis, Jeanette Holden, and Julia Davis in exchange for their testimony. [Id. at 425]. Petitioner did not, however, ask for leave to take the depositions of trial counsel and Edward Taylor. It does not appear from the record that the state courts addressed the motion for discovery, but no discovery was ever permitted.

### III. ANALYSIS

Caudill's petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. It provides in part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Also relevant to the present motion is § 2254(e)(2). It provides that a federal court shall not hold an evidentiary hearing on a claim unless the applicant shows: (1) that the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and (2) that "the facts underlying the claim would be sufficient to establish by clear and

7

convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). In Cullen v. Pinholster, the Supreme Court considered the interrelationship between these provisions to address "whether review under § 2254(d)(1) permits consideration of evidence introduced in an evidentiary hearing before the federal habeas court." Pinholster, 131 S.Ct. 1388, 1398 (2011).

In resolving this question, the Court held that under § 2254(d)(1), a federal habeas court's review is limited to the record that was before the state court that adjudicated the claim on the merits, and that any evidence later introduced in federal court is irrelevant to § 2254(d)(1) review. Id. This is because "review under § 2254(d)(1) focuses on what a state court knew and did." Id. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id. at 1400.

The Respondent argues that Pinholster bars the Court from granting Petitioner's motions for discovery, an evidentiary hearing, and appointment of an expert. Because the Kentucky Supreme Court adjudicated all of Petitioner's claims on the merits, this Court must apply § 2254(d) deference.[1] Pinholster holds that when conducting § 2254(d) review, a federal court may not consider any new evidence that was not in the record before the state court. Respondent, therefore, contends that it would be futile and a waste of resources to allow the Petitioner to seek out new evidence when her petition remains subject to the limitations of § 2254(d).

---

[1] The only possible exception being a sub-claim asserted in Ground 13 of the petition. In that sub-claim, Petitioner claims trial counsel performed ineffectively by failing to call Heather Harris as a witness to impeach Julia Davis. [R. 1 at 97-98]. The Kentucky Supreme Court did not address this claim on the merits. Instead, the state court held that although the issue was raised in Caudill's RCr 11.42 motion, the trial court did not address it, and therefore the argument was not preserved for appellate review. Caudill, 2009 WL 1110398 at *10.

Petitioner presents a number of arguments for why Pinholster should not apply to her motions or limit her ability to develop the facts underlying her claims. First, with respect to her discovery requests, Petitioner argues that the Pinholster decision makes no mention of discovery and does nothing to alter the "good cause" standard for discovery that is set forth in Rule 6 of the Rules Governing Section 2254 Cases. [R. 26 at 7]. Although Pinholster only addressed whether a federal habeas court conducting § 2254(d)(1) review may consider new evidence introduced by way of an evidentiary hearing, the undersigned sees no reason why that holding would not apply equally to new evidence the Petitioner seeks to obtain by way of discovery. See, e.g., Taylor v. Simpson, No. 06-cv-181-JBC, 2012 WL 404929, *2 (E.D. Ky. Feb. 6, 2012) (permitting discovery to acquire new evidence would be futile and a waste of judicial resources if the court cannot consider that evidence in conducting § 2254(d)(1) review); Parrish v. Simpson, No. 3:09-cv-254-H, 2011 WL 1594789, *2 (W.D. Ky. Apr. 27, 2011). It would defy logic to preclude a petitioner from developing factual information in an evidentiary hearing, but allow her to introduce the same factual information via discovery and expansion of the record. Whether obtained during an evidentiary hearing or through post-conviction discovery, new evidence has no bearing on a federal court's review under § 2254(d)(1). Pinholster, 131 S.Ct. at 1400.

Petitioner does not dispute that claims addressed by the Kentucky Supreme Court on the merits are subject to § 2254(d)(1) review. Petitioner, however, argues that the state court's adjudication of a number of her claims was based on an unreasonable determination of the facts under § 2254(d)(2).[2] She contends that Pinholster is not applicable to claims where the state court

---

[2] Specifically, Petitioner contends that the Kentucky Supreme Court's denial of claims eight, eleven, thirteen, fourteen, fifteen, sixteen, and seventeen was based on an unreasonable determination of the facts. [R. 26 at 11; 16; 19-20; 22; R. 1 at 107; 129].

9

based its decision on an unreasonable determination of the facts.

That provision states that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's decision "was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding.*" 28 U.S.C. § 2254(d)(2) (emphasis added). The plain language of (d)(2) suggests that federal review based on a state court's allegedly unreasonable determination of the facts is likewise limited to the record that was actually before the state court. Pinholster's bar on the consideration of new evidence, therefore, applies with equal force to federal habeas review conducted under § 2254(d)(2). This conclusion is supported by the decisions of other district courts in this Circuit. See Taylor, 2012 WL 404929 at *3 (the fact that petitioner raised a claim under both § 2254(d)(1) and (d)(2) does not entitle him to discovery otherwise prohibited by Pinholster); Trimble v. Bobby, No. 5:10-cv-149, 2011 WL 1527323, *2 n. 1 (N.D. Ohio Apr. 19, 2011) ("under both Sections of 2254(d), the Court may not consider outside evidence unless the petitioner did not already litigate the issue on the merits."); see also Pinholster, 131 S.Ct. at 1400 n. 7 (§ 2254(d)(2)'s language is clear that review is limited to the evidence presented in the state court proceeding).

Nevertheless, Petitioner asserts that Pinholster did not overrule an earlier Supreme Court decision supporting her argument that new evidence may be considered when conducting § 2254(d)(2) review. [R. 26 at 26]. In Wellons v. Hall, the Supreme Court stated:

> it would be bizarre if a federal court had to defer to state-court factual findings, made without any evidentiary record, in order to decide whether it could create an evidentiary record to decide whether the factual findings were erroneous. If that were the case, then almost no habeas petitioner could ever get an evidentiary hearing: So long as the state court found a fact that the petitioner was trying to disprove through the presentation of evidence, then there could be no hearing. AEDPA does not require such a crabbed and illogical approach to habeas procedures.

Wellons v. Hall, 130 S.Ct. 727, 730 n. 3 (2010) (*per curiam*). Wellons, however, is distinguishable from the present case.

Following his conviction for rape and murder, the petitioner, Marcus Wellons, discovered that some of the jurors had ex parte contact with the trial judge and had given distasteful gifts to the judge and bailiff. Id. at 729. He raised this apparent misconduct on direct appeal, but was constrained by the trial record which contained no mention of the gifts or ex parte contact. Accordingly, his conviction and sentence were affirmed. Id. The petitioner then sought state habeas relief and moved to develop evidence of the misconduct. The state court held that the matter had been decided on appeal and was res judicata. Id. He raised the issue again in a federal habeas petition, seeking discovery and an evidentiary hearing. Both the district court and the Eleventh Circuit denied his request for discovery and an evidentiary hearing because his misconduct claim was procedurally barred. Id.

The Supreme Court held it was error under Cone v. Bell to find Wellons' misconduct claim procedurally barred. Id. at 730. In Cone, the Court held that "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." Id. (quoting Cone v. Bell, 556 U.S. 449, 466 (2009)). Accordingly, it was error for the federal court to deny Wellons discovery and an evidentiary hearing based on the erroneous finding that the misconduct claim was procedurally barred. Id. at 730-31.

Unlike the present case, the state court in Wellons did not address the petitioner's misconduct claim on the merits. The federal courts in that case were not constrained by § 2254(d) and could have considered new evidence had they not improperly found Wellons' misconduct claim procedurally barred. Because the Kentucky Supreme Court adjudicated the Petitioner's claims on

11

the merits, this Court is constrained by the state court record and cannot consider any new evidence in deciding whether the state court relied on an unreasonable determination of the facts.

Moreover, unlike Wellons, this is not a case where the Petitioner's claims are based on "speculation" and "surmise". Rather, the record before the state court is replete with affidavits and exhibits numbering over 200 pages. [Tr. 489 - 713]. These exhibits include Petitioner's medical records as well as post-conviction affidavits by uncalled witnesses, witnesses, experts, and family members. As will be explained below, Pinholster does not completely shut the door on further factual development if it is needed. If, after reviewing the extensive state court record, this Court determines that any of the claims adjudicated by the state court were based on an unreasonable determination of the facts, § 2254(d) deference would not apply and new evidence can be considered.

In her third argument, Petitioner claims that Pinholster should not apply because Kentucky's post-conviction procedures are inadequate to permit development of the factual record. [R. 26 at 8-9; R. 31 at 1-3]. Caudill argues that the Supreme Court premised its holding in Pinholster on the assumption of "an adequate state court post-conviction process." [R. 26 at 8]. Petitioner claims that her post-conviction experience in state court was "grossly inadequate" because she was not permitted to conduct any discovery or granted an evidentiary hearing on the majority of her claims. [Id. at 9]. Because the state court did not permit development of the factual record, Caudill argues that Pinholster neither bars the requested discovery nor this Court's consideration of any new evidence that might result therefrom.

Petitioner relies on Panetti v. Quarterman for the proposition that the "Supreme Court has specifically found that inadequate state court procedures allow federal-court review without

12

deference to the state court's decision." [R. 26 at 9]. In Panetti, the petitioner was sentenced to death by a Texas state court. Panetti, 551 U.S. 930, 935 (2007). Following his conviction, petitioner made a showing in state court that he was not competent to be executed. Id. The state court rejected his claim and Panetti filed for a writ of habeas corpus in federal court. Id. In the federal proceedings, Panetti claimed, among other things, that the state proceedings on the issue of competency were insufficient to satisfy the procedural requirements mandated by federal law. Id.

Upon filing a renewed motion to determine competency, the state trial court appointed two mental health experts without input from the parties. Id. at 939. The court-appointed experts concluded that Panetti was competent to be executed. Id. at 940. Panetti's counsel filed objections to the experts' conclusions, but the state court closed the case, finding that Panetti was competent to be executed based on the experts' reports. Id. at 941. In federal court, Panetti challenged the procedures, or lack thereof, provided by the state court. The Supreme Court stated that pursuant to Ford v. Wainwright, a petitioner who has made a substantial showing of incompetency is entitled to a "fair hearing" and the opportunity to submit "evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination." Id. at 949-50 (citing Ford, 477 U.S. 399, 424-27 (1986)). The Court held that because Panetti was not provided with the minimum process required by Ford, the state court's decision regarding competency was not entitled to any deference under § 2254(d). Id. at 953-54.

As highlighted in Panetti, clearly established federal law as determined by the Supreme Court mandates certain minimum procedures if a petitioner makes a substantial post-conviction showing that he is incompetent to be executed. These procedures include a competency hearing and the opportunity to submit psychiatric evidence in response to state or court appointed experts. Id.

13

951-52. The "rudimentary process" the state court failed to provide in Panetti, however, was explicitly required by clear Supreme Court precedent. Id. at 949 (Justice Powell's concurrence in Ford "constitutes 'clearly established' law for purposes of § 2254"). The procedures discussed in Panetti are mandated only upon a threshold showing of incompetency. The decision does not speak to any minium process that is required for other post-conviction claims raised in state court. Caudill has not raised a claim that she is incompetent to be executed.

Petitioner also cites Townsend v. Sain to support her claim that the state court's failure to permit discovery was inconsistent with federal law. In that case, the Supreme Court held that

> [w]here the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

Townsend v. Sain, 372 U.S. 293, 312-13 (1963), *overruled on other grounds by* Keeney v. Tamayo-Reyes, 504 U.S. 1, 5-6 (1992). Townsend, however, is a pre-AEDPA case that addressed when a *federal court* must hold an evidentiary hearing. It did not delineate any specific procedures a state court must adopt in providing post-conviction remedies to state prisoners. In fact, the Court specifically noted that "[i]n announcing this test we do not mean to imply that the state courts are required to hold hearings and make findings which satisfy this standard, because such hearings are governed to a large extent by state law." Id. at 313 n. 9.

The Supreme Court has stated that when a state chooses to offer help to those seeking relief from convictions, the Constitution does not dictate the exact form such assistance must assume. Pennsylvania v. Finley, 481 U.S. 551, 559 (1987). Although there is no federal constitutional right to post-conviction review, once a state creates the remedy, the review procedures must comport with

14

due process. See District Atty's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 129 S.Ct. 2308, 2332 (2009) (*Stevens, J., dissenting*); see also Finley, 481 U.S. at 557 (when states elect to provide avenues for post-conviction relief, those procedures must comply with the fundamental fairness mandated by the Due Process Clause). Petitioner has not directed the Court to any Supreme Court decisions holding that a state's failure to permit discovery in post-conviction proceedings violates due process or otherwise takes a case outside the scope of Pinholster. See Fears v. Bagley, No. 08-4050, 2012 WL 516169, *8 (6th Cir. Feb. 16, 2012) (slip opinion) (petitioner asserted no clearly established federal law indicating that state court's failure to allow introduction of evidence in post-conviction proceedings was defective).

Contrary to Petitioner's assertion that Kentucky's post-conviction procedures do not provide "rudimentary process", Kentucky Rule of Criminal Procedure 11.42 actually states that if material issues of fact cannot be determined on the face of the record, the state court shall grant a prompt hearing and, if necessary, appoint counsel. RCr. 11.42(5). Kentucky's post-conviction procedures permit factual development, and the state court's failure to grant Petitioner the requested discovery was not contrary to, or an unreasonable application of, federal law. Despite the perceived lack of factual development in state court, Caudill's petition is still subject to § 2254(d) and Pinholster.

Finally, Petitioner points out that the Pinholster decision did not explicitly address whether and when a federal court should allow discovery or conduct an evidentiary hearing. Pinholster, 131 S.Ct. at 1411 n. 20 ("we need not decide whether § 2254(e)(2) prohibited the District Court from holding the evidentiary hearing or whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied."). Rather, the Pinholster decision only holds that new evidence may not be considered in determining whether a Petitioner's claims

are barred by § 2254(d).

There are a number of other situations where new evidence may be considered in a federal habeas proceeding. For example, if the state court did not address a claim "on the merits", § 2254(d) would not apply, and a federal court can consider new evidence in conducting *de novo* review. Pinholster, 131 S.Ct. at 1401. A federal court might also consider new evidence when deciding whether there is cause and prejudice or actual innocence to excuse a defaulted claim. House v. Bell, 547 U.S. 518, 537-38 (2006). Finally, in a situation that may be applicable to the present case, if after review solely on the state-court evidence, it appears the state court contravened or unreasonably applied clearly established federal law, the federal court may then consider additional evidence to determine whether habeas relief should be granted. A number of federal courts in this Circuit have stated that new evidence may be considered in such a situation. See, e.g., Ballinger v. Prelesnik, – F.Supp.2d –, 2012 WL 591931, *9-10 (E.D. Mich. 2012); Lynch v. Hudson, No. 2:07-cv-948, 2011 WL 4537890, *5 (S.D. Ohio Sept. 28, 2011); Williams v. Mitchell, No. 1:09-cv-2246, 2011 WL 5118469, *2 (N.D. Ohio Oct. 27, 2011) (collecting cases). Accordingly, the Court may consider new evidence obtained by way of discovery or an evidentiary hearing if the Petitioner first overcomes 28 U.S.C. § 2254(d) based solely on the evidence that was actually before the state court.

## IV.  CONCLUSION

For the reasons discussed above, Pinholster applies to the Petitioner's motions for discovery, an evidentiary hearing, and appointment of an expert witness. [Rs. 26, 27]. As Petitioner correctly argues, however, that decision did not specifically address whether and when discovery or an evidentiary hearing should be permitted. Accordingly, the undersigned is presented with three options: (1) deny Petitioner's motions without prejudice pending § 2254(d) review of the petition

by the District Judge; (2) permit the Petitioner to conduct any factual development on the front-end, with the caveat that any new evidence will be put aside and may only be considered after § 2254(d) review of the petition; or (3) conduct a preliminary § 2254(d) review to determine whether any new evidence could even be considered.

Each has advantages and disadvantages, but the undersigned believes following the first option makes the most sense in this case. The second option creates a substantial risk of wasting resources and delaying resolution of this matter. Allowing discovery, retention of an independent expert, and an evidentiary hearing would be both expensive and time consuming. Because any new evidence derived from these sources might never even be considered by the Court, it seems advisable to delay ruling on the motions until the petition is reviewed on the merits. But see Conway v. Houk, No. 2:07-cv-947, 2011 WL 6849096, *20 (S.D. Ohio Dec. 29, 2011) (Because "the Pinholster decision is relatively new and federal courts are still sorting through its potential ramifications and limitations ... it seems advisable to err on the side of caution, gather information early, and decide later whether or to what extent the information may be considered."). The third option runs the same risk, in that any factual development the undersigned permits after § 2254(d) review might result in evidence that will never be considered by the Court. For these reasons,

IT IS ORDERED THAT the Petitioner's motions for discovery, an evidentiary hearing, and appointment of an expert witness [Rs. 26, 27] are DENIED WITHOUT PREJUDICE. If the Court determines that any of Petitioner's claims are not barred by § 2254(d), it may then decide whether discovery, an evidentiary hearing, or appointment of an expert witness will be necessary to resolve any claims subject to *de novo* review.

Signed May 14, 2012.

Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge